## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| THE UNIVERSITY OF CHICAGO MEDICAL CENTER, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 17 C 2005 ) |
| NATIONAL NURSES UNITED, | ) Judge Rebecca R. Pallmeyer ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

The University of Chicago Medical Center (UCMC) filed this action to vacate an arbitration award in favor of Defendant National Nurses United (NNU). The arbitrator found that UCMC violated the parties' collective bargaining agreement by making unreasonable changes to its attendance policy and by implementing those changes without first bargaining with NNU. To remedy these violations, the arbitrator ordered UCMC to rescind the unreasonable attendance policy and bargain with NNU before changing its attendance policy in the future. UCMC argues that the arbitrator exceeded his authority under the agreement by ordering the parties to bargain over future changes, but it does not challenge the validity of the rescission order. The collective bargaining agreement at issue expired by its terms in October 2014, and UCMC has offered no evidence that NNU currently seeks to bargain over a proposed attendance policy. Because the court is uncertain that a live controversy exists for it to adjudicate, the parties are ordered to show cause within 21 days why the case should not be dismissed without prejudice.

## BACKGROUND

Plaintiff University of Chicago Medical Center is an academic medical center and Illinois not-for-profit corporation located on the South Side of Chicago. (Pl.'s Local Rule 56.1 Statement of Undisputed Material Facts (hereafter "PSOF") [20], at ¶ 3.) Defendant National

Nurses United is a labor organization that represents a bargaining unit of more than 1,500 registered nurses employed by UCMC. (*Id.* at ¶¶ 4-6.)

On June 3, 2011, UCMC and NNU entered into a collective bargaining agreement (CBA or Agreement) that remained in effect through October 31, 2014. (*Id.* at ¶ 7; Agreement, Ex. 2 to Compl. [1].) The two sections of the Agreement most relevant to this case are Article 3 and Article 8. Article 3 is titled "Management Rights." (Agreement 9.) The first paragraph of that Article states:

> The management of the Medical Center and Clinics, the control of the premises, and the direction of the nursing force are vested exclusively in the Medical Center. The right to manage includes, but is not limited to, the following: the right to select, hire, transfer, promote, discipline, suspend or discharge for just cause, assign and supervise employees; to determine and change starting times, quitting times; and shifts, and the number of hours to be worked by nurses; to determine staffing patterns, included but not limited to, the assignments of nurses as to numbers employed, duties to be performed, qualifications required, and areas worked; to determine policies and procedures with respect to patient care; to determine or change the methods and means by which its operations are to be carried on; *to establish and revise reasonable personnel rules and policies, including those related to employee conduct (which right shall not be exercised in an arbitrary or capricious manner and shall be subject to the grievance and arbitration provision of this Agreement)*; to carry out all ordinary functions of management, whether or not exercised by the Medical Center prior to the execution of this Agreement, provided however, that such rights shall not be exercised in conflict with express provisions of this Agreement, nor shall the Medical Center in exercising its rights disregard the professional responsibilities of the nurses.

The second paragraph of Article 3 provides, further, that for proposed changes in practices and policies that are not covered by the "Management Rights" paragraph, "the Medical Center will notify NNU in writing of the desired change and reasons for the proposed change and provide an opportunity for NNU and the Medical Center to bargain." (*Id.*)

Article 8 outlines a grievance and arbitration procedure. The final step of this procedure is "final and binding" arbitration by an impartial arbitrator. (*Id.* at 26-27.) Section 8.1 sets limits on the arbitrator's authority. It states that "[t]he arbitrator . . . shall have authority only to interpret and apply the provisions of this Agreement to the extent necessary to decide the

2

submitted grievance and shall not have authority to add to, detract from, or alter in any way the provisions of this Agreement." (*Id.* at 27.)

On or around July 15, 2014, UCMC revised the attendance policy that applied to its hourly-paid labor force, including members of the bargaining unit represented by NNU. (PSOF ¶ 10.) The revisions altered the disciplinary threshold for attendance-related infractions such as tardiness and absenteeism. (*Id.* at ¶ 11.) NNU grieved these changes and eventually brought the dispute to arbitration. (*Id.* at ¶ 13.) UCMC and NNU selected Peter Meyers as the impartial arbitrator, pursuant to the selection procedures provided in Article 8. (*Id.* at ¶ 14.)

In the proceedings before Arbitrator Meyers, NNU argued that UCMC's revisions to the attendance policy were "unreasonable" and that they "conflict[ed] with the collectively bargained sick leave and discipline provisions of the contract between the parties." (Report of Proceedings 13, Ex. A to PSOF.) The union claimed, for example, that the new policy conflicted with UCMC's influenza policy and with certain provisions of the Illinois Administrative Code by penalizing nurses who called in sick due to fever or respiratory symptoms.[1] (Post-Hearing Brief of NNU 19-20, Ex. C to PSOF.) The union also noted that UCMC's peer institutions had adopted "more lenient" attendance policies, and asserted that the statistical data relating to absenteeism that UCMC had relied on to justify its new attendance policy exaggerated the number of shift-hours that UCMC nurses missed due to illness. (*Id.* at 21-24.) NNU suggested that another arbitrator had already found UCMC's revised attendance policy to be "unreasonable" for similar reasons in a proceeding initiated by Teamsters Local 743, which represented certain clerical, service, and maintenance employees at UCMC. (*Id.* at 27-28.) For all these reasons, NNU asked Arbitrator Meyers to "find that the new Attendance Policy is unreasonable" and to "order[] the policy rescinded." (*Id.* at 29.)

---

[1] The allegedly conflicting provision of the Illinois Administrative Code states that registered nurses in Illinois "shall practice nursing only when in functional physical and mental health." (Post-Hearing Brief of NNU 20, Ex. C to PSOF (citing Ill. Admin. Code tit. 68, § 1300.350(3)).)

The union did not argue that UCMC should have provided notice and an opportunity to bargain before revising the attendance policy. Nor did the union argue that attendance policies, as a general matter, do not fall within the category of "personnel rules and policies" that UCMC has a right to "establish and revise" so long as the policy in question is "reasonable." Indeed, by arguing that UCMC's new attendance policy was *not* reasonable, the union implicitly conceded that point.

UCMC similarly defined the issue before the arbitrator as "[w]hether or not the 2014 attendance policy . . . is reasonable." (Report of Proceedings 15.) But in addition to arguing for the reasonableness of its revised attendance policy, the Medical Center also devoted several pages of its post-hearing brief to arguing that the management rights clause in Article 3 of the CBA unambiguously reserved to UCMC the right to "unilaterally implement a reasonable attendance policy." (Employer's Post-Hearing Brief. 29, Ex. B to PSOF.) To drive the point home, UCMC cited and attached to its brief two arbitration awards (from 2013 and 2015, respectively) that interpreted the management rights clause of the CBA. In the 2013 award, Arbitrator Martin H. Malin considered whether UCMC violated Article 3 of the CBA by "unilaterally implement[ing] a meal break clocking procedure." (Malin Opinion 2, Ex. B to PSOF.) Malin concluded that "the Union clearly and unmistakably manifested an intent to waive its right to bargain with respect to 'personnel rules and policies, including those related to employee conduct.'" (*Id.* at 29.) Malin's conclusion, UCMC argued to Arbitrator Meyers, leaves "little question that UCMC has the right under the CBA to implement a new attendance policy." (Employer's Post-Hearing Brief 31.) UCMC then quoted similar language in a 2015 award from Arbitrator George Fleischli, stating that UCMC "has the right to establish and revise reasonable rules and policies during the term of the Agreement, even though the rules and policies may involve subject matter that is otherwise a mandatory subject of bargaining." (Fleischli Award 32, Ex B to PSOF.) UCMC cited this language as evidence "that attendance is one of the principal policies to which the parties anticipated the management rights clause would apply."

4

(Employer's Post-Hearing Brief 32.) Attendance policies are clearly one of the "personnel rules and policies, including those related to employee conduct," that the first paragraph of Article 3 reserved to management, UCMC argued. Therefore, the notice and bargaining requirements in the second paragraph of Article 3 does not apply to attendance policies.

UCMC's attempt to preemptively foreclose a line of argument that NNU had not even raised before Arbitrator Meyers appears to have backfired. Meyers not only sided with NNU on the question of whether UCMC's revisions to its attendance policy were "reasonable," he also concluded that "the Medical Center committed a second violation of Article 3" by failing to provide NNU with advance notice of the proposed changes and an opportunity to bargain over them. (Meyers Award 56, Ex 1. to Compl.) "Employee attendance and the attendance policy are not expressly mentioned in the first paragraph of Article 3," Meyers wrote, "so the Medical Center is obligated by the language set forth in the collective bargaining agreement to comply with the process described in the second paragraph of Article 3 in order to develop and implement changes to the attendance policy." (*Id.*) According to Meyers, "this portion of Article 3 mandates that the Medical Center must give written notice to the Union of any changes that it proposes to make in the attendance policy, must provide the Union with the reasons for the proposed changes, and must provide an opportunity for the parties to bargain over the proposed changes." (*Id.*) Meyers's conclusion appears to assume, at least implicitly, that attendance policies do not fall within the category of "personnel rules and policies, including those related to employee conduct." Meyers did not cite either the Malin or the Fleischli award in his written opinion, though he confirmed that he had "carefully reviewed all of the testimony and evidence in the record, as well as the parties' arguments in support of their opposing positions." (*Id.* at 49.)

In addition to citing the text of Article 3, Meyers cited sections 9.4 and 17.11 of the CBA to support his conclusion that UCMC is obligated to bargain over future changes to its attendance policy. Neither of these sections refers to collective bargaining. Rather, they

5

contain substantive rules that define the disciplinary consequences for nurses who fail to provide at least two hours' notice when calling in sick (section 9.4), and that limit UCMC's use of non-serious disciplinary infractions more than six months old in an ongoing "corrective action process against [an] employee" (section 17.11). (Agreement 28, 46-47.) Meyers suggested that these provisions were relevant to his conclusion about UCMC's obligation to bargain because the requirement in Article 3 that the parties bargain over issues not covered in the management rights clause was intended to ensure that UCMC's policies do not conflict with specific rights established elsewhere in the CBA, including those in sections 9.4 and 17.11. On Meyers's view, UCMC's new attendance policy "directly conflicts" with section 17.11 and arguably conflicts with section 9.4. (*Id.* at 57.) "These conflicts and other substantive problems with the new attendance policy certainly could have been avoided if the Medical Center had followed, as it should have done, the clear and unambiguous process set forth in the second paragraph of Article 3 of the Agreement. This is exactly one of the many potential problems that the notice, explanation, and negotiation process is intended to address." (*Id.* at 58.)

Meyers concluded the award by stating that the Medical Center's unreasonable changes to its attendance policy "shall be rescinded, and the procedures, steps, and other provisions contained in the 2011 attendance policy must be reinstated." (*Id.* at 65.) He also stated that "[a]ny pending grievance over individual application of the 2014 policy shall be considered under the 2011 policy." (*Id.* at 65.) Finally, Meyers warned that "[i]f the Medical Center desires to make changes in the attendance policy in the future, it must abide by the requirements of Article 3 of the parties' collective bargaining agreement." (*Id.*)

On March 14, 2017, UCMC filed a Complaint that asks this this court to vacate "[t]he portion of Arbitrator Meyers's Award requiring UCMC to bargain before implementing an attendance policy or any other personnel rules or policies." (Compl. 5.) NNU moved to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that "[t]he sole basis" for UCMC's claim "is the allegation that the arbitrator did not acknowledge a prior

6

arbitrator's award." (Mot. to Dismiss [13-1], at 1.)² This court concluded that NNU's argument "can fairly be understood as a response to Plaintiff's objection to enforceability of the Arbitration award," and ordered the parties to brief it in cross-motions for summary judgment. (Min. Entry of May 22, 2017 [17].) UCMC's Motion for Summary Judgment reiterates that the Medical Center "has not sought to set aside the portion of the award finding the 2014 attendance policy unreasonable," and that it seeks to vacate only that portion of the Meyers Award addressed to the parties' future bargaining obligations. (Mem. in Supp. of Mot. for Summ. J. [19], at 2.) NNU filed a Cross-Motion for Summary Judgment requesting that the court "affirm[] the arbitration award in full." (Cross-Mot. for Summ. J. [21], at 2.) Beyond this request, there is nothing in the record to suggest that NNU has actually sought to bargain over a proposed attendance policy or that UCMC has refused to do so.

## **DISCUSSION**

Article III of the United States Constitution limits the jurisdiction of the federal courts to "live cases and controversies." *Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017). The U.S. Supreme Court has repeatedly warned that "an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Kingdomware Technologies, Inc. v. United States*, 136 S. Ct. 1969, 1975 (2016) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91 (2013)). In the area of labor arbitration, Article III concerns sometimes arise when a party seeks judicial confirmation of an arbitration award containing a prospective remedy—such as a cease and desist order or some other articulation of a party's future obligations—in the absence of a specific dispute over how the prospective remedy applies to a specific set of facts. Most courts that have considered these claims have found them to be either moot or unripe for

---

² Because an arbitrator is not bound by prior awards unless the parties expressly agree that such awards should have binding precedential effect, NNU reasoned, and because the parties here did not so agree, UCMC's Complaint fails to state a claim on which relief can be granted. (Mot. to Dismiss 1 (citing *Production & Maintenance Employees' Local 504 v. Roadmaster Corp.*, 916 F.2d 1161 (7th Cir. 1990); *Consolidation Coal Co. v. United Mine Workers*, 213 F.3d 404, 407 (7th Cir. 1994)).)

7

adjudication. *See Chicago Regional Council of Carpenters v. Onsite Woodwork Corp.*, No. 11 C 8365, 2012 WL 6189635, at *4 (N.D. Ill. Dec. 12, 2012) (Kendall, J.) (collecting cases).

In *Derwin v. Gen. Dynamics Corp.*, for example, the First Circuit rejected a union's suit to confirm an arbitration award because it did not "seek resolution of a concrete dispute between the parties." 719 F.2d 484, 490 (1st Cir. 1983). The collective bargaining agreement at issue included a grievance procedure providing for mediation by a shop steward. This procedure required the employer to grant the steward an "off-the-job pass for such time off with pay at his normal rate as he may reasonably require" to investigate and settle the grievance. *Id.* at 485. After the agreement went into effect, the employer developed its own guidelines "regulating the issuance of off-the-job passes to stewards." *Id.* The union grieved the employer's guidelines, which appear to have conflicted with mandatory language in the agreement, and eventually brought the dispute to arbitration. The arbitrator upheld the employer's right to issue guidelines as a general matter, but also "state[d] certain principles" and "approve[d] or disapprove[d] various practices with respect to such a system" for regulating the issuance of off-the-job passes. *Id.* at 486. Three years later, after the union filed seventeen new grievances relating to the company's failure to issue passes to stewards, the union sought judicial confirmation of the original award—presumably for the purpose of bypassing arbitration and bringing future disputes over the pass system directly to court in the form of actions to hold the employer in contempt of the confirmation order. *Id.* That complaint for confirmation of the earlier award, the district court concluded, was barred by the statute of limitations.

On appeal, the First Circuit held that the suit was not time barred, but nevertheless concluded that confirmation was "unwarranted" because the union had not asked the court to resolve a specific, ongoing dispute about how the "broad compendium of general principles" in the award should apply to a specific grievance. *Id.* at 490. "[A]n order of confirmation issued in a factual vacuum may result in unpredictable pressure and aspersions upon the party against whom the order runs," the court explained. *Id.* at 491. "Courts, after all, do not enjoin parties

8

from violating the law without proof of a real likelihood that such will happen. . . . Under the circumstances, Article III's prudential values and concerns of judicial economy strongly counsel against the entry of a confirmatory order." *Id.* at 492.

The *Derwin* court rested its decision on federal labor policy as well as Article III. The court worried that the union's "bifurcat[ed]" strategy for enforcing the arbitrator's award—that is, a strategy involving one action to confirm the award's "general principles" and subsequent actions to enforce compliance with them—would "risk injecting the courts improperly into the arbitration process." *Id.* at 492. Instead of bringing its pending grievances over off-the-job passes to arbitration, as the parties' collective bargaining agreement envisioned (and federal labor policy encouraged), the union could potentially bring them directly to federal court in actions alleging that the employer was in contempt of the court's confirmation order. Although the First Circuit recognized that it could "later decide, when an enforcement action is brought, whether the latter belongs in a judicial or an arbitral forum," it saw "no point to such spinning of wheels, especially since ambiguities in an arbitration award are ordinarily to be determined by arbitration, not by resort to the courts." *Id.* at 493.

The Seventh Circuit has not embraced all of the reasoning in *Derwin*. In *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588 (7th Cir. 2017), a union representing employees of the Hyatt Regency Chicago hotel sought judicial confirmation of two arbitration awards that ordered the hotel to cease and desist assigning certain tasks to managers in the absence of a genuine emergency. Hyatt argued that there was no live controversy between the parties because it had not contested the validity of the awards. The court rejected this argument because the union had "cited some 41 examples of managers allegedly performing bargaining-unit work . . . after the two arbitrators had ordered Hyatt to cease and desist from further violations." *Id.* at 594. These "41 pending alleged violations," the court explained, "demonstrate that there is an ongoing controversy about the use of managers to perform bargaining-unit work." *Id.* at 598-99.

9

Hyatt also argued that confirmation of the awards would undermine federal labor policy by allowing the union to bypass the arbitration process and bring future complaints directly to court through contempt proceedings. The Seventh Circuit rejected this argument as well, distinguishing *Derwin* as a case where "the evident (if unspoken) aim of the union" was to "enable the court itself to resolve additional grievances that would otherwise be submitted to arbitration." *Id*. at 605. In *Unite Here*, by contrast, the union had "conceded that it must arbitrate any grievances pre-and post-dating the district court's confirmation decision." *Id*. Whereas the First Circuit had decided that confirmation would encourage the parties to litigate future disputes rather than arbitrate them, the Seventh Circuit concluded that "[c]onfirmation simply preserves the possibility of additional relief in the form of contempt sanctions if and when the union prevails in future arbitrations (and can make an appropriate case for such sanctions)." *Id*.

To the extent *Derwin* is incompatible with *Unite Here,* the Seventh Circuit's decision is controlling. But the issues on which the two courts diverge are not relevant factors here. This is in some ways an easier case than either *Unite Here* or *Derwin*, both of which at least involved one party alleging that the other was not complying with an arbitrator's decision. In the case before this court, neither UCMC nor NNU has alleged that the union actually seeks to bargain over a proposed attendance policy or that UCMC is refusing to do so. UCMC argues that Arbitrator Meyers had no authority to order that the parties bargain over future attendance policies, but it has not given the court any reason to believe that a declaration to this effect will actually help to resolve a live controversy between the parties. Indeed, the court is not even certain that the language of the collective bargaining agreement, which expired in 2014, has any continuing force today. UCMC seeks to vacate a portion of the Meyers Award that does not appear to be affecting the parties at all—at least not right now.

The Seventh Circuit implied in *Unite Here* that were it not for the "41 pending alleged violations" cited by the union, that case would not have involved the type of "ongoing

controversy" necessary to establish federal jurisdiction. 862 F.3d at 598-99. Several district courts within the Seventh Circuit have dismissed actions to confirm arbitration awards where, as in this case, neither party alleged that the other was refusing to comply with the award. *See, e.g.*, *Chicago Regional Counsel of Carpenters v. Onsite Woodwork Corp.*, No. 11 C 8365, 2012 WL 6189635 (N.D. Ill. Dec. 12, 2012); *Yellow Freight Sys., Inc. v. Local Union 710*, No. 93 C 7480, 1994 WL 665086 (N.D. Ill. Nov. 16, 1994); *Local 2414, United Mine Workers of America v. Consolidation Coal Co.*, 682 F. Supp. 399 (S.D. Ill. 1988).

This court suspects that UCMC's suit similarly presents no live case or controversy, but an additional wrinkle warrants further consideration. Unlike *Unite Here*, *Derwin*, or any of the district court cases noted above, this is a suit to *vacate* a portion of an arbitration award that articulates the parties' future rights and obligations. Arguably, this makes it more analogous to a pre-enforcement challenge to the validity of a generally applicable law or administrative regulation than to a suit to *confirm* an arbitration award. Where a plaintiff challenges the validity of a generally applicable law or administrative regulation before anyone has tried to enforce it against him, the "ripeness" of the claim "depends on 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" *Wisconsin Right to Life State Political Action Comm. v. Barland*, 664 F.3d 139, 149 (7th Cir. 2011) (quoting *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983) and *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). The court therefore must consider whether the issues here are fit for judicial decision and whether the hardship to the parties of withholding consideration is sufficient to risk issuing a decision that resembles an advisory opinion.

The issues may indeed be fit for judicial decision. Although "[j]udicial review of arbitration awards is extremely limited," deference to arbitration "is not unlimited." *United States Soccer Fed'n, Inc. v. United States Nat'l Soccer Team Players Ass'n*, 838 F.3d 826, 831-32 (7th Cir. 2016). Courts regularly decide whether an arbitration award "draws its essence from the

collective bargaining agreement." *Id.* (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). The record here contains the necessary facts to decide this question.

Withholding consideration, however, will not present a significant hardship to the parties. The court is aware that there is a 90-day limitations period for actions to vacate arbitration awards in Illinois, *see Unite Here*, 862 F.3d at 593 n.2; 710 ILCS 5/12(b), and that withholding consideration therefore may prevent UCMC from vacating Arbitrator Meyers' statements regarding the parties' future bargaining obligations. *Cf. Sullivan v. Lemoncello*, 36 F.3d 676, 691 (7th Cir. 1994) ("[F]ailure to challenge an arbitration award within the applicable limitations period renders the award final.") (citations omitted). But this result is not inherently unjust in the context of a mere statement of the parties' future obligations in an arbitration award whose validity UCMC does not otherwise contest. Arbitrator Meyers' conclusion that Article 3 imposes a bargaining obligation with regard to all proposed attendance policies is not binding on future arbitrators, *see Unite Here*, 862 F.3d at 599, and UCMC is free to argue in future arbitration proceedings that the CBA does not, in fact, require it to bargain over attendance policies before adopting them. Requiring UCMC to raise these arguments as a defense in future proceedings does not place the Medical Center in the impossible position of choosing between exercising what it alleges to be its contractual right and subjecting itself to the risk of criminal or civil penalties, as the violation of an arbitrator's decision carries no such sanction. *Compare Abbott Labs.*, 387 U.S. at 152-53 (pre-enforcement review of federal regulation warranted where non-compliance "would risk serious criminal and civil penalties for the unlawful distribution of 'misbranded' drugs"), *with Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 165 (1967) (pre-enforcement review unwarranted where violation "would at most lead only to a suspension of certification services to the particular party, a determination that can then be promptly challenged through an administrative procedure, which in turn is reviewable by a court."). And though withholding consideration might result in future grievances and arbitration proceedings

related to the question of whether UCMC must bargain over attendance policies, this court has no obligation "to protect the arbitral process from repetitive grievances." *Local 1545, United Mine Workers of America v. Inland Steel Coal Co.*, 876 F.2d 1288, 1296 (7th Cir. 1989). It would run afoul of Article III for this court to decide the question in the absence of specific allegations that NNU seeks to bargain over a proposed attendance policy and that UCMC has refused to do so.

## **CONCLUSION**

This court has the power to decide the ripeness question *sua sponte*. *See Home Builders Ass'n of Greater Chicago v. U.S. Army Corps of Engineers*, 335 F.3d 607, 619 (7th Cir. 2003). Nevertheless, the court believes the parties should have an opportunity to present facts showing that there is, in fact, an ongoing case or controversy. The pending motions [13, 18, 21] are stricken, and the parties are directed to show cause within 21 days why the court should not dismiss this case as unripe.

ENTER:

Dated: January 18, 2018

_____
REBECCA R. PALLMEYER
United States District Judge